■ In the Matter of FANNIE GILMORE, Respondent, v TINO HERNANDEZ, as Chairperson and Member of the New York City Housing Authority, Appellant. [836 NYS2d 143]—

Order, Supreme Court, New York County (Karen S. Smith, J.), entered October 6, 2006, which granted the petition to the extent of annulling so much of respondent's determination as conditioned petitioner's continued occupancy on her precluding visits from her godson, unanimously reversed, on the law, without costs, the petition denied, the proceeding dismissed and the administrative determination reinstated and confirmed.

Petitioner has been a resident of the Housing Authority's

Washington/Lexington development since 1955. In or about June 2005, the Police Department provided the Housing Authority with an updated list of sex offenders that included petitioner's godson, who had listed petitioner's address as his own. Petitioner was informed of this and told that her godson was not authorized to reside in her apartment. About five weeks later, the Housing Authority charged petitioner with endangering the health and safety of her neighbors, and scheduled a hearing to terminate her tenancy.

The hearing officer determined that the Housing Authority's charges were sustained because her godson's regular presence in the apartment constituted an unauthorized occupancy, citing his visits with petitioner's consent at least every other day, and his use of this address to receive his mail. The hearing officer determined that petitioner should be eligible to remain in her apartment subject to the godson's permanent exclusion. Respondent adopted the hearing officer's decision.

Petitioner commenced this CPLR article 78 proceeding to remove the exclusionary condition or, alternatively, to amend the condition to allow the godson to visit but not occupy the apartment.

Regulations of the United States Department of Housing and Urban Development require the Housing Authority to deny admission to a family whose member is subject to a lifetime registration requirement under any sex offender statute (24 CFR 960.204 [a] [4]). New York's Sex Offender Registration Act (Correction Law § 168-h [2]) requires "level three" sex offenders to register for life. Housing Authority rules additionally require that in order to add an individual to a leased household, the tenant must first obtain written consent from the development manager. It is undisputed that petitioner's godson has been adjudicated a level three sex offender, and the required consent was never obtained.

In *Matter of Romero v Martinez* (280 AD2d 58 [2001], *lv denied* 96 NY2d 721 [2001]), we held that a Housing Authority resident may have *continued occupancy conditioned on the* "permanent exclusion" of a dangerous individual, which includes a prohibition on visitation. "[T]here is nothing either impossible or per se unreasonable about asking a tenant of public housing, in the interests of protecting her neighbors, to agree that a family member who is a proven danger to others not be permitted to reside in or visit the apartment" (280 AD2d at 63).

Supreme Court's present concern that a nonvisitation requirement is burdensome and subjects petitioner to a constant threat of eviction is misplaced. Only in appropriate circumstances

would a tenant be bound by a personal obligation to keep an excluded person from visiting, and the Housing Authority would retain discretion, by way of the hearing process, in reviewing violations of that condition.

Inasmuch as the Housing Authority's rules do not define "permanent exclusion," *Romero* dictates that this term encompasses the concept of visitation, especially where such a person would constitute a danger to other tenants. Indeed, a permanent exclusion disposition would be rendered meaningless if visitation were still allowed. In that event, the Housing Authority would be faced with the task of determining such issues as how many overnights would constitute occupancy. A blanket prohibition on residency and visitation is clearer, easier to enforce, and better protects the community from a potential danger. In any event, the Housing Authority asserts that the term "permanent exclusion" is absolute and without equivocation, and encompasses visitation. We defer to that agency's expertise for its interpretation of the term (*see Matter of Howard v Wyman*, 28 NY2d 434 [1971]). Concur—Tom, J.P., Andrias, Buckley, Gonzalez and Malone, JJ.